## LEONARD *v.* FIELDS.

1. A crop produced on any part of the rented land is liable for the whole rent, whether produced by the tenant or his subtenant, unless the landlord assented to or ratified the subletting.
2. Where a tenant sublets a part of the land without the landlord's consent, and also sublets a part of the land to the landlord, and the landlord is seeking, by distress warrant against the original tenant, to collect the rent of the whole premises out of the crop grown by the subtenant, he should account for such an amount as the rental value of the land which he subrented bears to the entire rental value.
3. A tenant has no power to consent to any application by the landlord of the subject-matter of the lien for rent, which would leave that lien in force to the prejudice of a subtenant, relatively to the collection of the entire rent from the crop grown by the subtenant. Nor can the landlord apply the proceeds of the tenant's crop to an independent indebtedness of the tenant, to the injury of the subtenant.

MAY 13, 1915.

Equitable petition. Before Judge George. Wilcox superior court. January 26, 1914.

*Hal Lawson,* for plaintiff in error. *Max E. Land,* contra.

EVANS, P. J. Joseph Fields rented 30 acres of land to John and Will Alexander, who subrented 12 acres to Will Leonard. A distress warrant, issued at the instance of the landlord against the principal tenants, was levied upon the crop grown by the subtenant, who filed a petition to enjoin the proceeding. On the trial it appeared that in October, 1910, Fields rented to John and Will Alexander 30 acres of land for the year 1911 for $125, and took their note for this amount. At the same time he sold them a mule for $165, retaining the title to the mule. About two or three months afterwards the Alexanders sold the mule without Fields' consent or knowledge. In the early part of the year 1911 the Alexanders subrented 12 acres of the land to Will Leonard for the sum of $41, who gave to them his note for that sum. The Alexanders also subrented 6 acres to Fields, their landlord, for which he agreed to

pay $20. The remaining land was cultivated by the tenants and their cropper. Fields deposited in a bank the notes given by the Alexanders for the purchase of the mule and for the rent. On the maturity of the crop the Alexanders sold a bale of cotton and paid $25 of its proceeds to Fields. Subsequently the Alexanders sold to Fields the crop raised on the land cultivated by them, for an amount not disclosed in the evidence, with direction to credit the same on their indebtedness to him. Alexander testified that the $25 from the proceeds of the bale of cotton which he paid to Fields, and the $20 which Fields was to pay for the rent of the 6 acres of land, were to be credited·on the rent note. Fields testified that these amounts were agreed to be credited on the mule note. The sub-tenant testified that Fields, upon discovery that he had subrented from the Alexanders, consented to his sublease. The landlord, on the other hand, denied that he said or did anything indicative of his assent to the sublease. The landlord further testified that the Alexanders deposited. with a bank the note of the subtenant, with direction to apply its proceeds, when collected, on the rent note of his tenants; and that the bank collected the subtenant's note and applied its proceeds according to the Alexanders' direction. The jury found in favor of the landlord the sum of $64; and the sub-tenant moved for a new trial, which was refused.

1. A crop produced on any part of the rented premises is liable for the whole rent of the entire premises, whether produced by the tenant or his subtenant, unless the landlord assented to or ratified the subletting. *Andrew* v. *Stewart,* 81 *Ga.* 53 (7 S. E. 169) ; *Thompson* v. *Commercial Guano Company,* 93 *Ga.* 282 (20 S. E. 309) ; *Hudson* v. *Stewart,* 110 *Ga.* 37 (35 S. E. 178). The whole of the crop also is liable to the special lien of the landlord for supplies, etc., furnished to the tenant to make the crop. *Nash* v. *Orr,* 9 *Ga. App.* 33 (70 S. E. 194). It appears from the evidence that the landlord sold the tenants a mule, in October, 1910, reserving title to himself, and about two months thereafter the tenants disposed of the mule. The evidence does not show that the landlord sold the tenants the mule for the purpose of making the crop of the ensuing year, or that the furnishing of a mule was necessary to make the crop. In other words, the evidence is insufficient to show that. the landlord had a special lien upon the crop raised upon the rented premises, by virtue of Civil Code section

3348, which gives a special lien to a landlord for supplies, mules, etc., furnished to make the crop; and this indebtedness must be treated as unsecured by lien on the crop.

2. If nothing more appeared than that the tenants had sublet the land without the landlord's permission, the latter would be entitled to make the full amount of his rent out of the crop grown by the subtenant, on the distress warrant issued against the principal tenants. But other elements enter into the transaction. One is, that the landlord subrented a part of the land from his tenants, who, according to the landlord's testimony, agreed that the rent contracted to be paid should be credited on the mule note. This presents the question, can a landlord subrent from a tenant a part of the premises and agree with his tenant that the amount agreed to be paid for the subrenting be credited upon an independent indebtedness of the tenant, so as to make the crop of a subtenant liable for the whole rent of the entire premises? We think not. Although the tenant and the landlord may characterize the surrender of a portion of the premises as a subrental, relatively to a subtenant the transaction will be regarded in the nature of a withdrawal of a part of the demised premises, and the landlord can not thereafter equitably require the subtenant to pay the rent for the whole of the land originally rented. Nor do we think the price fixed by the landlord and his tenant as rent for the land which the tenant sublet to the landlord would be binding upon the tenant. Where the landlord is seeking to make the entire rent out of the crop of the subtenant, he should account for such an amount as the land which was turned back to him by the tenant bears to the entire rental value. In other words, there should be an equitable apportionment between the rent contracted to be paid, and the rent of the land remaining after the surrender of a part of it by the tenant to the landlord.

3. It is conceded that the landlord purchased from the principal tenant his entire crop raised on the rented premises, and applied the same on the mule note. There is a dispute as to whether the application of the payment was made by the direction of the tenant; but we do not think that makes any difference in this case. As between the parties the rule governing appropriation of payments is clear and simple. If the creditor has several demands, the debtor may direct the application of the payment. If he fails

to do so, the creditor has the right to appropriate at his election. If neither exercise the privilege, the law will direct the application in such manner as is reasonable and equitable. Civil Code (1910), § 4316. But where one of the debts of the creditor is secured by lien on the property, and he receives from his debtor either the property under lien or its proceeds, the rights of third persons can not be ignored by a conventional appropriation by the parties. In the case of a mortgage, the proceeds of mortgaged property must be applied to extinguish the mortgage indebtedness, without regard to any agreement between the mortgagor and mortgagee, so far as the rights of innocent third persons would otherwise be prejudicially affected. Jones on Chattel Mort. § 640; Hughes *v.* Johnson, 38 Ark. 285; Ill. etc. Bank *v.* Alexander Stewart Lumber Co., 119 Wis. 54 (94 N. W. 777). A tenant has no power to consent to any application by the landlord of the subject-matter of the lien for rent, which would leave that lien in force to the prejudice of a mortgagee of the tenant, relatively to so much of the crop as the landlord did not receive. *Cofer* v. *Benson,* 92 *Ga.* 793 (19 S. E. 56). The equity of a subtenant to have applied the proceeds of the crop grown by the tenant and received by the head landlord in extinguishment of the latter's lien for rent stands on the same footing. *Barlow* v. *Jones,* 117 *Ga.* 412 (43 S. E. 690). It would seem that the true equitable rule would require a landlord, who receives the proceeds from a portion of the crop raised by his tenant, to apply such proceeds to the rent, as against his subtenant from whom he is attempting to enforce the collection of the entire rent out of the crops grown by the subtenant, who subleased without his consent. The amount of this credit manifestly was not allowed. The total rent contracted to be paid was $125. The landlord actually received $41 from the subtenant, and contracted to pay $20 for his sublease. Deducting these two items from the rent contracted to be paid leaves the sum found by the jury in favor of the landlord against the subtenant, and leaves out of consideration the $25 paid by the tenant, as well as the value of the crop, which was not disclosed by the evidence. We therefore think that the verdict is not supported by the evidence, and a new trial should be granted.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*